FILED
JUN 16 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN DOE 150,

    Plaintiff,

v.

ARCHDIOCESE OF PORTLAND IN
OREGON, ROMAN CATHOLIC
ARCHBISHOP OF PORTLAND IN
OREGON,

    Defendants.

CV 08-691-PK

OPINION AND
ORDER

PAPAK, Magistrate Judge:

    Fictitiously-named plaintiff John Doe 150 ("John") filed this action against defendants Archdiocese of Portland in Oregon (the "Archdiocese") and Roman Catholic Archbishop of Portland in Oregon (the "Archbishop") on June 6, 2008. John alleges defendants' vicarious liability for sexual battery of a child and intentional infliction of emotional distress on a theory of

Page 1 - OPINION AND ORDER

*respondeat superior*, and direct liability for fraud and for negligence. This court has jurisdiction over John's action pursuant to 28 U.S.C. § 1334(b), based on the relatedness of these proceedings to a case arising under Title 11 of the United States Code.[1]

Now before the court is defendants' motion (#31) for summary judgment. Defendants argue that, based on undisputed facts of record, John's claims are necessarily time-barred as a matter of law. I have considered the defendants' motion, all of the pleadings on file, and oral argument on behalf of the parties. For the reason set forth below, defendants' motion is granted.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

---

[1] Specifically, this action is subject to the future claims fund under the Third Amended and Restated Joint Plan of Reorganization confirmed in *In re Roman Catholic Archbishop of Portland*, 04-37154, which, in relevant part, sets a $20 million cap on the total funds available to pay all claims made against the Archdiocese through 2023.

## FACTUAL BACKGROUND

John, who is currently approximately 65 years old, was in 1958 an unemancipated minor child approximately 13 years old and a parishioner of St. Charles Church in Portland, Oregon. At that time, Father Maurice Grammond was a priest of the Archdiocese of Portland, although apparently not assigned to St. Charles. John alleges that, beginning in or around 1957, Fr. Grammond engaged in conduct John refers to as "Grooming" – befriending John and his family, gaining their trust, and spending time alone with John.

John alleges that, on each of two different trips away from home in 1958, Grammond sexually abused him – on at least one of the trips multiple times – by fondling his genitals. He does not allege or offer evidence that he ever repressed the memory that these incidents occurred. Indeed, in his own words, he knew he had "been abused" at all times. It is his position that he only realized he had "been harmed" by the abuse he had suffered in late 2007 or early 2008, shortly before filing this action.

John attained his majority in 1963. In or around that time, or within approximately two years thereafter, John learned that certain friends of his had been warned not to go near Fr. Grammond because he was known or suspected to have sexually abused minors. Despite this, John apparently continued to hold Fr. Grammond in a degree of esteem, for example expressing a desire to introduce his then-fiancée to Fr. Grammond in or around 1965.

In the late 1990's and/or early 2000's, John recalls reading newspaper articles in *The Oregonian* regarding Fr. Grammond's acts of sexual abuse of minors.

In 2001, John's brother filed an action against the Archdiocese, alleging that he (the brother) had been abused by Fr. Grammond while a minor. John's brother apparently obtained

Page 3 - OPINION AND ORDER

either a favorable judgment or a favorable settlement in connection with his action.

In January 2005, John received a "Notice of Last Day to File Claims" against the Archdiocese or Archbishop for claims involving clergy sexual abuse. According to this notice, on January 3, 2005, the United States Bankruptcy Court for the District of Oregon entered an order setting April 29, 2005, as the last day for bringing existing clergy sexual abuse claims against the Archdiocese or Archbishop. The notice advised that a person "may" have such a claim if the person "had sexual contact with or w[as] sexually touched by a Catholic priest. . . ." The notice made clear that such claims would become time-barred if not filed prior to the claims bar date. John received the notice in the mail, and also read the notice in *The Oregonian* on three occasions in January 2005. John testified that he understood upon reading the notice that he "may" have had a claim against the Archdiocese.

John retained the copy of the notice that was sent to him through the mail for his personal records. John did not bring a claim before the claims bar date, nor did he consult with an attorney before that date.

John offers in support of his position that he could not reasonably have understood that he had been harmed by the abuse he suffered at Fr. Grammond's hands prior to late 2007 or early 2008 the opinion testimony of his treating mental health care provider. John's therapist opines that as a consequence of the abuse he suffered as a child, John "has limited insight into himself, and is not very psychologically minded, tending to minimize attending to internal thoughts and feelings, a psychological defense mechanism. . . ." The therapist further opined that John displays "a distinct tendency towards avoiding self-disclosure" and is "likely to underestimate the psychological symptoms that [he] may be experiencing." The therapist further opined that

Page 4 - OPINION AND ORDER

persons with John's psychological profile "are anxiously conformant to the expectations of others in authority" and "have a notable blind spot to recognizing and acknowledging psychological difficulties." The therapist further opined that John was damaged in such a way as to have caused him to avoid "processing" the abuse experience fully until recently.

## ANALYSIS

### I. Statutory Limitations Period Applicable to John's Claims

Oregon statutory law provides a two-year limitations period generally applicable to claims sounding in tort. *See* O.R.S. 12.110. Under O.R.S. 12.160, however, actions accruing while a plaintiff is a minor may be filed up to one year after the plaintiff attains majority. *See* O.R.S. 12.160. Moreover, under O.R.S. 12.117, actions based on conduct constituting child abuse may be brought at any time before the victim of child abuse reaches the age of forty, or, in the event the victim has not by that time discovered the causal link between the abuse and any injury suffered as a result, and in the exercise of reasonable care could not have been expected to discover such link, within five years after the date the victim either discovered or reasonably should have discovered the causal link. *See* O.R.S. 12.117(1).[2] For purposes of Section 117, the term "child abuse" is defined as:

    (a)    Intentional conduct by an adult that results in:

        (A)    Any physical injury to a child; or

        (B)    Any mental injury to a child which results in observable and substantial impairment of the child's mental or psychological

---

[2] Effective January 1, 2010, O.R.S. 12.117 was amended to provide a five-year rather than three-year period for bringing suit after discovery of an injury or a causal connection between a defendant's conduct and an injury. This amendment is retroactively applicable, except as to cases that reached judgment prior to January 1, 2010. *See* O.R.S. 879.002.

Page 5 - OPINION AND ORDER

                      ability to function caused by cruelty to the child, with due regard to the culture of the child;

    (b)    Rape of a child, which includes but is not limited to rape, sodomy, unlawful sexual penetration and incest, as those acts are defined in ORS chapter 163;

    (c)    Sexual abuse, as defined in ORS chapter 163, when the victim is a child; or

    (d)    Sexual exploitation of a child, including but not limited to:

        (A)    Conduct constituting violation of ORS 163.435 and any other conduct which allows, employs, authorizes, permits, induces or encourages a child to engage in the performing for people to observe or the photographing, filming, tape recording or other exhibition which, in whole or in part, depicts sexual conduct or contact; and

        (B)    Allowing, permitting, encouraging or hiring a child to engage in prostitution, as defined in ORS chapter 167.

O.R.S. 12.117(2). The Oregon Court of Appeals has expressly held that Section 117 may properly be applied to torts of negligence (one of which is at issue here), stating that "the statute clearly does apply to negligence claims, but only [to] those involving 'knowingly allowing, permitting or encouraging child abuse.'" *Lourim v. Swensen* [("*Lourim I*")], 147 Or. App. 425, 439 (1997). The *Lourim I* court further specified that actual as opposed to constructive knowledge that such child abuse was taking place is required for the extended limitations period to apply. *Id.* at 444.

    The Oregon Supreme Court has provided the following guidance for courts seeking to apply the discovery rule in connection with statute of limitations analysis:

> To discover a particular element of legally cognizable harm, the plaintiff does not need to know to certainty that each particular element exists. The discovery rule is designed to give plaintiffs a reasonable opportunity to become aware of their

Page 6 - OPINION AND ORDER

> claim. Actual knowledge that each element is present is not required. On the other hand, a mere suspicion is insufficient to begin the statute of limitations to run. We believe that a quantum of awareness between the two extremes is contemplated by the statute. Therefore, **the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the ... elements [of a cause of action] exists.**
>
> We emphasize that this is an objective test. In most cases, the inquiry will concern what a plaintiff should have known in the exercise of reasonable care. In such cases, the relevant inquiry is how a reasonable person of ordinary prudence would have acted in the same or similar situation. **Relevant to this analysis will be a plaintiff's failure to make a further inquiry if a reasonable person would have done so. The discovery rule does not protect those who sleep on their rights, but only those who, in exercising the diligence expected of a reasonable person, are unaware that they have suffered legally cognizable harm.**

*Gaston v. Parsons*, 318 Or. 247, 255-256 (1994) (emphasis supplied). The *Gaston* court went on to note that the reasonableness inquiry can be impacted by, *e.g.*, representations made by the tortfeasor on which the plaintiff might reasonably rely, or by side effects of the tortious conduct that might act to "mask" the harm the plaintiff suffered. *See id.* at 256-257.

The question of when a person in the exercise of reasonable care should have discovered an injury or the causal connection between an injury and a tortfeasor's conduct is generally a question of fact for a jury to decide. In *Minisce v. Thompson*, 149 Or. App. 746 (1997), the Oregon Court of Appeals held that the question of "whether [the injury] should have sufficiently alerted plaintiff to trigger discovery . . . is a quintessential jury question." *Minisce*, 149 Or. App. at 752. In *Hoeck v. Schwabe Williamson & Wyatt*, 149 Or. App. 607 (1997), the court held that "precisely when a person reasonably should have known that the harm suffered was caused by another's negligence generally presents a question of fact." *Hoeck*, 149 Or. App. at 612.

Nevertheless, a court may grant summary judgment "[w]here the record taken as a whole

Page 7 - OPINION AND ORDER

could not lead a rational trier of fact to find for the nonmoving party," because under those circumstances "there is no 'genuine issue for trial'." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

This action was filed June 6, 2008. John attained the age of 40 in 1985. Thus, John's claim may only be timely for statute of limitations purposes if in the exercise of reasonable care he could not have been expected to discover the causal link between the abuse he suffered and any consequential injury prior to June 6, 2003.

## II.    The Bankruptcy Court's Claims Bar Date Notice

Federal Rule of Bankruptcy Procedure 3003(c)(3) provides that the bankruptcy court "shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Pursuant to Rule 3003(c)(3), in January 2005 the Bankruptcy Court for the District of Oregon issued an order fixing a "claims bar date" of April 29, 2005, for existing claims against the Archdiocese or Archbishop, stating that such a date was "necessary for the prompt and efficient administration of the [Archdiocese's] Chapter 11 case and to protect the interests of the [Archdiocese], its creditors and other parties in interest[.]" As noted above, John received notice of the claims bar date in timely fashion, from multiple sources.

Pursuant to the bankruptcy court's order, any individual with an *accrued* claim against the Archdiocese was required to file a proof of claim by April 29, 2005. *See* Fed. R. Bankr. Pro. 3003(c)(2) ("Any creditor . . . whose claim . . . is not scheduled . . . shall file a proof of claim within the time prescribed by subdivision (c)(3). . . ."). The Archdiocese's Joint Plan of bankruptcy established that the archdiocese was "discharged from all liability" on claims and debts arising before the effective date of the Archdiocese's reorganization that were not filed

Page 8 - OPINION AND ORDER

before the claims bar date. "[t]he granting of a discharge operates as a permanent injunction against any attempt to collect or recover on a prepetition debt." *Irizarry v. Schmidt (In re Irizarry)*, 171 B.R. 874, 878 (B.A.P. 9th Cir. 1994); *see also* Bankr. C. § 524(a).

The bankruptcy court's order incorporated the language of the discovery rule incorporated in O.R.S. 12.117(1) into the definition of future claimants whose claims would not be barred if not filed prior to the claims bar date:

> The only claimants [within the class of future claimants] are (1) minors; (2) those with repressed memory; and (3) those persons who know they were subjected to sexual contact as children but who have "not discovered the [resulting] injury or the causal connection between the injury and the child abuse, nor in the exercise of reasonable care should have discovered the injury or the causal connection between the injury and the child abuse[.]" O.R.S. 12.117(1)

*In re Roman Catholic Archbishop*, Case No. 04-37154-elp11, 2005 Bankr. LEXIS 42 (Bankr. D. Or. Jan. 10, 2005) (second modification original). Analysis of the timeliness of John's claims in connection with the claims bar date is thus identical to the timeliness analysis in connection with the applicable statute of limitations, except that for John's claims to be deemed timely by reference to the claims bar date he must not have discovered, nor in the exercise of reasonable care should he have discovered the causal connection between the abuse he suffered and any consequential injury prior to April 29, 2005.

### III. Timeliness of John's Claims

In support of their motion for summary judgment, defendants do not contest John's testimony that he did not actually discover prior to late 2007 that the child abuse he suffered at Fr. Grammond's hands had caused him cognizable harm. However, defendants argue that in the exercise of reasonable care John *should* have discovered the causal connection between the abuse

and his consequential harm by not later than January 2005. I agree with the defendants that no trier of fact could conclude that John's failure to discover the causal connection between the childhood abuse and his consequent injury prior to January 2005 was reasonable.

As noted above, John concedes that he never repressed memory of the abusive acts themselves. John's position is that he was at all material times aware that he had been abused, but that he did not realize until 2007 or 2008 that the abuse had actionably harmed him. I find it noteworthy that John's realization that he had, in fact, been harmed by Fr. Grammond's abuse was not triggered by any particular event in John's life or elicited in the course of therapy, but rather occurred, from John's perspective, out of the blue, in the manner of an "epiphany."[3]

Also as noted above, under Oregon law a plaintiff should, in the exercise of reasonable care, discover the causal connection between childhood abuse and consequent injury where a "reasonable person of ordinary prudence" would be aware of a "substantial possibility" that the elements of a cause of action are present, or would know facts that would cause a person of ordinary prudence to make "further inquiry" as to that possibility. *Gaston*, 318 Or. at 255-256. Here, John concedes that he read newspaper articles regarding lawsuits arising out of Fr. Grammond's acts of sexual abuse of minors in the late 1990's and/or early 2000's, that he was contemporaneously aware that in 2001 his own older brother filed a successful lawsuit arising out of abuse he had suffered at Fr. Grammond's hands, and that when in January 2005 he read the bankruptcy court's notice of the claims bar date he understood that he "may" have had a claim

---

[3] In John's words, "I call it an epiphany. I was just – I was in the – in my dining room, and it's like – I mean, I can't say I saw anything on TV. I can't say I read something or anything. It was just like it came over me like, 'I'm going to sue the Archdiocese.' I said just – it was just that simple. I don't even know what came over me." Deposition of John Doe 150, 201:15-22.

Page 10 - OPINION AND ORDER

against the Archdiocese. Upon the occurrence of any of these three events, a reasonable person of ordinary prudence who was aware that he had suffered childhood sex abuse at Fr. Grammond's hands would necessarily have made "further inquiry" to determine whether he might have a claim against the Archdiocese and/or Archbishop arising out of such abuse, and moreover even absent such further inquiry would necessarily have been aware of the "substantial possibility" that such a claim might lie.

John argues that the nature of his injury caused him to be unable to appreciate that he had been harmed by Fr. Grammond's abuse until the date when he came to the realization that he would sue the Archdiocese. I find it plausible that cognitive impairments like those discussed by John's therapist could make it difficult for a reasonable person of ordinary prudence to appreciate the extent to which he had been harmed by childhood abuse. However, a reasonable person suffering from all of the cognitive impairments discussed by John's therapist would nevertheless have been on notice that further inquiry could reveal the substantial possibility that he might have claims against the Archdiocese. Moreover, neither John nor his therapist offers any answer to the question how it was that John came suddenly in late 2007 or early 2008, to the realization that he had been harmed by Fr. Grammond's abuse – with no identifiable external event to trigger the realization – if he could not reasonably have been expected to reach the same realization prior to April 2005. I conclude that John has not raised a material question of fact as to whether the nature of his injury might reasonably have "masked" the causal connection between the childhood abuse and his consequential injury prior to 2007.

Because no trier of fact could conclude on the basis of the evidentiary record before me that it was reasonable for John to fail, prior to April 29, 2005, to discover or to make inquiry

Page 11 - OPINION AND ORDER

regarding the causal connection between the abuse he suffered and his consequent injury, John's claims are time-barred as a matter of law by the bankruptcy court's order establishing April 29, 2005, as a bar date for claims against the Archdiocese. Moreover, because no trier of fact could reasonably conclude that it was reasonable for John to fail prior to June 6, 2003 – approximately two years following John's brother's successful lawsuit against the Archdiocese – to make the same discovery or inquiry, John's claims are additionally time-barred under O.R.S. 12.117(1). Defendants' motion for summary judgment is therefore granted as to each of John's claims in this action.

## CONCLUSION

For the reasons set forth above, defendants' motion (#31) for summary judgment is granted, and all claims in this action are dismissed with prejudice. A final judgment will be prepared.

Dated this 16th day of June, 2010.

_____
Honorable Paul Papak
United States Magistrate Judge