FILED

SEP 10 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN DOE 150,

    Plaintiff,

v.

CV 08-691-PK

OPINION AND ORDER

ARCHDIOCESE OF PORTLAND IN OREGON, ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON,

    Defendants.

PAPAK, Magistrate Judge:

    Fictitiously-named plaintiff John Doe 150 ("John") filed this action against defendants Archdiocese of Portland in Oregon (the "Archdiocese") and Roman Catholic Archbishop of Portland in Oregon (the "Archbishop") on June 6, 2008, alleging defendants' vicarious liability for sexual battery of a child and intentional infliction of emotional distress on a theory of

Page 1 - OPINION AND ORDER

*respondeat superior*, and direct liability for fraud and for negligence. I granted defendants' motion (#31) for summary judgment on June 16, 2010, dismissing all of John's claims with prejudice and issuing final judgment in defendants' favor. John did not file a notice of appeal from the judgment against him within the time period provided for doing so by the Federal Rules of Appellate Procedure.

On August 16, 2010, John filed a motion for retroactive extension of the time within which to file notice of appeal, arguing that his failure to file timely notice had been occasioned by his counsel's excusable neglect. Now before the court is defendants' letter motion, dated September 1, 2010, to compel production of documents characterized as relevant to analysis of the merits of John's motion for retroactive extension of time. I have considered the letter motion, all of the pleadings on file, and oral argument on behalf of the parties. For the following reasons, defendants' letter motion to compel is granted in part and denied in part as discussed below.

## ANALYSIS

Federal Appellate procedure Rule 4(a)(1) provides that a party intending to make an appeal as of right from a civil judgment is required to file a notice of appeal within thirty days following entry of the judgment to be appealed. *See* Fed. R. App. P. 4(a)(1)(A). The district courts are authorized to extend the time within which notice of appeal must be filed where:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

Fed. R. App. P. 4(a)(5)(A). Where such a motion for extension of time is filed after the

Page 2 - OPINION AND ORDER

expiration of the 30-day deadline provided in Rule 4(a)(1), notice of the motion must be provided to all other parties. *See* Fed. R. App. P. 4(a)(5)(B). John's motion was timely filed and served on the defendants.

Final judgment (#66) was entered in this action June 18, 2010. John was therefore required under Rule 4(a)(1) to file notice of appeal by not later than July 19, 2010. It is undisputed that he failed to do so.

John asserts that his failure to file timely notice of appeal was caused when a paralegal working on his case erroneously docketed the deadline for filing notice of appeal as August 20, 2010 (the date thirty days after the court issued its decision to grant defendants' bill of costs in this action rather than the date thirty days after entry of final judgment). John further asserts that the mis-docketing occurred at a time when the two lawyers most active in litigating his action were either traveling or too busy to oversee the paralegal's activities effectively. It is John's position that, under these circumstances, his counsel's failure to file timely notice of appeal constituted excusable neglect for purposes of Rule 4(a)(5). In support of his position, John has offered into evidence, *inter alia*, email communications among his counsel and his counsel's paralegal staff tending to establish that paralegal Russ Kleve docketed the notice deadline as August 20, 2010, in the mistaken but good-faith belief that the Federal Rules of Appellate Procedure required notice of appeal to be filed within thirty days of the district court's decision on defendant's bill of costs.

In connection with preparing their response to John's Rule 4(a)(5) motion for extension of time, defendants requested that John (i) either stipulate that all of Gilion Dumas, Kelly Clark, Kristian Roggendorf, Peter Janci, Jen Anderson, Sheryl A., Tyler Vandemark, Russ Kleve, and

Page 3 - OPINION AND ORDER

Linda Ramsey (each either one of John's attorneys of record in this action or an employee of such a lawyer, each of whom is listed as a recipient of the court's electronic notices in this action) received the court's electronic notice of filing of final judgment in this action (#66), defendants' bill of costs (#67), and the declaration of Margaret Hoffmann in support of defendants' bill of costs (#68) or, in the alternative, produce documents establishing that each such individual was removed from responsibility in this action, documents establishing the settings relating to marking email messages as read for the email accounts used by each such individual, and documents establishing when each such individual read the court's email notices in connection with Docket Nos. 64-70 ("Discovery Requests Nos. 1-3"); (ii) in connection with an email message dated June 23, 2010, from paralegal Russ Kleve to Clark, Dumas, and Roggendorf (suggesting that Kleve understood that the Archdiocese, rather than the court, would prepare final judgment in this action, noting that Federal Appellate Procedure Rule 4 requires notice of appeal to be filed within thirty days after issuance of final judgment, and indicating that Kleve would "monitor the file" for final judgment and docket the notice of appeal deadline when the judgment was filed), produce documents establishing whether the recipients read and received the message, whether Kleve received notice that the recipients had read the message, and any reply by any recipient to the message ("Discovery Requests No. 4"); (iii) in connection with an email message dated June 15, 2010, from Kleve to Dumas (suggesting that Kleve understood that the Archdiocese, rather than the court, would prepare final judgment in this action, indicating that Kleve would docket the notice of appeal deadline based on issuance of a "Money Judgment" not yet issued, and requesting Dumas' confirmation that Kleve's understanding was correct), produce documents establishing whether Dumas read and received the message, whether Kleve received

notice that Dumas had read the message, and any reply by Dumas to the message ("Discovery Requests No. 5"); (iv) in connection with an email message dated July 21, 2010, from Kleve to Clark, Janci, and Dumas (indicating that Kleve would docket the notice of appeal deadline as August 20, 2010 "[b]ased on" his receipt of the court's electronic notice of its decision to grant defendants' bill of costs as of July 21, 2010), produce documents establishing whether the recipients read and received the message, whether Kleve received notice that the recipients had read the message, and any reply by any recipient to the message ("Discovery Requests No. 6"); (v) produce any other documents reflecting communications regarding entry of final judgment in this action and/or calendaring the notice of appeal deadline ("Discovery Requests No. 7"); (vi) produce all documents relating to any response to defendants' bill of costs ("Discovery Requests No. 8"); (vii) produce an unredacted copy of Kleve's July 15, 2010, email message to Dumas ("Discovery Requests No. 9"); (viii) produce his counsel's policy and/or procedures for docketing case deadlines, including notices of appeal and judgments ("Discovery Requests No. 10"); and (ix) produce all documents relating to whether he would satisfy the "money judgment" against him ("Discovery Requests No. 11"). Taking the position that he was under no obligation to produce documents in discovery at this stage of these proceedings, John refused to make any of the requested stipulations or to produce any of the requested documents. Defendants' letter motion to compel followed.

As to John's position that he may not be required to produce documents in discovery at this late stage of these proceedings, it is clearly within the court's discretion to order the requested discovery at this or any other stage of proceeding, so long as the requested production is relevant to issues raised in the action and defendants have established good cause for

Page 5 - OPINION AND ORDER

requesting it. *See, e.g.*, Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action"). I therefore proceed to analysis of whether defendants have established good cause for the requested production.

The determination whether neglect may be deemed excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include. . . the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993) (footnote omitted). Although whether the neglect was within the moving party's control is a factor to be considered, it is nevertheless clear that excusable neglect "is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392.

Here, John has offered evidence that would normally be shielded from judicial scrutiny under the work-product doctrine, tending to establish the reason for his delay in filing notice of appeal and that his counsel at material times intended in good faith to file a timely notice of appeal. Defendants do not claim to have reason to doubt John's counsel's veracity or to believe either that the delay had some other, undisclosed cause or that John's counsel have acted in bad faith in connection with John's failure to file timely notice. Nevertheless, defendants are entitled to put John's position to the test, and to determine whether evidence exists that might call it into question. Moreover, defendants should not be required to take John's evidentiary submissions at face value without any opportunity to determine whether John is in possession of other, undisclosed evidence that might afford a different interpretation of the proffered email messages.

I therefore conclude that defendants have good cause to conduct at least some limited discovery into the reasons for the delay and whether John and/or his counsel acted in good faith in connection with the delay.

Before turning to analysis of defendants' particular discovery requests, I will first address the issue of evidentiary privilege generally, and the extent to which John's production and adopted legal position may function to waive otherwise applicable privilege. As a general rule, placing documents or communications otherwise subject to evidentiary privilege at issue in a lawsuit waives the privilege for those documents or communications. *See, e.g., Lorenz v. Valley Forge Insurance Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). Here, John's implicit assertion of good faith in connection with his failure to file timely notice of appeal effectively puts attorney-client communications that otherwise would be privileged squarely at issue here, namely, those communications, if any exist, regarding John's or his counsel's desire and/or intention either to file a timely appeal or not to do so. Attorney-client and work-product evidentiary privileges are therefore narrowly waived as to communications regarding whether or not John's counsel would file an appeal on John's behalf only. The privileges are emphatically not waived as to, *e.g.*, the advisability or prospects of such an appeal.

Similarly, John's production of his attorneys' selected internal communications necessarily waives work-product protections and evidentiary privilege for any attorney communications regarding the same subject matter, whether directed internally or to John, where such communications bear on the gravamen of the disclosed communications. *See* Fed. R. Evid. 502(a).

Finally, the work-product doctrine does not shield documents from judicial scrutiny

Page 7 - OPINION AND ORDER

where the party seeking the documents has substantial need for them and cannot obtain them elsewhere without undue hardship. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). It is undisputed that defendants have no way of obtaining any of the requested documents other than from John and/or his counsel. Whether defendants have established substantial need for documents within any of the nine requested categories will be analyzed below, in connection with analysis of the merits of the motion to compel as to each category of request.

> i. **Discovery in Connection with John's Counsel's Receipt of the Court's Electronic Notifications Regarding Docket Nos. 66-68**

At oral argument, John's counsel went on the record as stipulating that each of the recipients of the court's electronic notifications regarding Docket Nos. 66, 67, and 68 did in fact receive the notifications. In consequence, John has satisfied his production obligations in connection with Discovery Requests Nos. 1-3, and the letter motion to compel is denied as moot to the extent it seeks to compel production in connection with those requests.

> ii. **Discovery in Connection with Kleve's Email Messages Dated June 23, 2010, June 15, 2010, and July 21, 2010 and in Connection with Final Judgment in this Action and Calendaring the Notice of Appeal Deadline**

As noted above, defendants seek production of documents showing whether the recipients of Kleve's three email messages dated June 23, June 15, and July 21, 2010, received those messages, documents showing whether Kleve was aware that the recipients had or had not received those messages, and any replies to those messages, as well as documents containing communications not otherwise produced regarding the final judgment in this action and Kleve's actions in docketing the deadline for filing notice of appeal. The requested documents are unambiguously relevant to the preparation of defendants' opposition to John's motion for

Page 8 - OPINION AND ORDER

extension of time, in that they will tend to establish the extent to which John's attorneys were aware of paralegal Kleve's conceptual error, whether or to what extent the error was remarked upon *qua* error, how many attorneys, if any, read Kleve's messages without noting the error, and whether John's counsel acted in good faith in connection with the failure to file timely notice of appeal, all factors which may bear upon whether the error constituted excusable neglect. Moreover, defendant has a substantial need for the documents, and in any event John's production effectively waived any privilege inhering in the requested documents, for reasons discussed above. Defendants' letter motion to compel is therefore granted as to Document Requests Nos. 4, 5, 6, and 7. John's production in response to these requests may be redacted in the event they contain attorney mental impressions on unrelated subject matters, but only in a manner consistent with the foregoing considerations. In the event of any dispute over the propriety of any redaction, John may produce the unredacted responsive documents for *in camera* inspection.

### iii.   Discovery in Connection with Defendants' Bill of Costs and John's Satisfaction of the "Money Judgment" in this Action

As noted above, defendants seek production of documents relating to John's response to defendants' bill of costs in this action, and to documents relating to whether John would "satisfy the money judgment" and/or his "satisfaction of the money judgment" in this action. This discovery is marginally relevant to defendants' opposition to John's motion for extension of time, in that responsive documents might tend to establish that one or more of John's attorneys looked at the electronic docket in preparing a response to the bill of costs, thereby potentially noticing that final judgment had already been entered. However, particularly in light of the fact that John

Page 9 - OPINION AND ORDER

prepared no response to the bill of costs and did not oppose it, defendants' need for the discovery is less than substantial, so that to the extent that responsive documents would constitute attorney work-product, there would be no justification for ordering the documents to be produced. Moreover, neither John's production of internal attorney email messages nor his legal position regarding excusable neglect constitute waiver of privilege in connection with the bill of costs or its satisfaction. Defendants' letter motion to compel is therefore granted as to Document Requests Nos. 8 and 11, with the important proviso that John need not produce responsive documents to the extent they constitute attorney work product or are subject to the attorney-client privilege.[1]

### iv. Discovery of Kleve's Unredacted Email Message Dated July 15, 2010

As noted above, defendants seek production of an unredacted copy of Kleve's email message of July 15, 2010, a redacted copy of which was provided to defendants in connection with John's opposition to the letter motion to compel. If the redacted portion of the communication bears on the same subject matter as the unredacted portion (or any of the other disclosed communications), then defendants are entitled to production of the unredacted portion as well, as discussed above, but if the redacted portion of the document contains attorney mental impressions on a subject matter unrelated to the subject matter of any disclosed communication, then the privilege has not been waived as to the redacted contents of the communication. Defendants' letter motion to compel is therefore granted as to Document Request No. 9, with the proviso that John may redact the responsive document in a manner consistent with the foregoing

---

[1] In the event that John withholds documents from production on the basis of the attorney-client privilege or the work-product doctrine, his counsel should produce an appropriately detailed privilege log.

Page 10 - OPINION AND ORDER

considerations. In the event of any dispute over the propriety of any remaining redaction, John may produce the unredacted responsive document for *in camera* inspection.

### v.   Discovery in Connection with John's Counsel's Docketing Procedures

As noted above, defendants seek production of documents containing John's counsel's procedures and policies in connection with docketing case deadlines. The requested discovery is marginally relevant to defendants' opposition to John's motion for extension of time, in that responsive documents might tend to establish that john's counsel lacked such procedures or had only inadequate procedures in place, which would bear on the excusability of John's neglect. However, evidence already in defendants' possession establishes that John's counsel did have such procedures in place: it is John's position that the failure to file timely notice of appeal was caused by an error in implementing a docketing procedure. Moreover, at oral argument John's counsel went on the record as asserting that her law firm had never before had occasion to file a motion for retroactive extension of time in connection with filing notice of appeal, an assertion that defendants may verify, if they so choose, by reference to publicly available court documents. There is therefore no justification for ordering production of the requested documents. Defendants' letter motion is therefore denied as to Discovery Requests No. 10.

### CONCLUSION

For the reasons set forth above, defendants' letter motion to compel dated September 1, 2010 is denied as to defendants' Discovery Request No. 10, denied as moot as to defendants' Discovery Requests Nos. 1-3, granted as discussed above as to defendants' Discovery Requests

///

///

Page 11 - OPINION AND ORDER

Nos. 4-7, and granted with the proviso that there has been no waiver of applicable privilege, if any, as discussed above, as to defendants' Discovery Requests Nos. 8, 9, and 11.

Dated this 9th day of September, 2010.

*/s/ Paul Papak*
Honorable Paul Papak
United States Magistrate Judge

Page 12 - OPINION AND ORDER