FILED
DEC 07 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN DOE 150,

    Plaintiff,

v.

CV 08-691-PK

OPINION AND ORDER

ARCHDIOCESE OF PORTLAND IN OREGON, ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON,

    Defendants.

PAPAK, Magistrate Judge:

    Fictitiously-named plaintiff John Doe 150 ("John") filed this action against defendants Archdiocese of Portland in Oregon (the "Archdiocese") and Roman Catholic Archbishop of Portland in Oregon (the "Archbishop") on June 6, 2008, alleging defendants' vicarious liability for sexual battery of a child and intentional infliction of emotional distress on a theory of

Page 1 - OPINION AND ORDER

*respondeat superior*, and direct liability for fraud and for negligence. I granted summary judgment in defendants' favor on June 16, 2010, and issued a final judgment dismissing John's claims with prejudice on June 18, 2010. John did not timely file a notice of appeal from the judgment against him.

Now before the court is John's motion (#72) for retroactive extension of time to file a notice of appeal. In support of his motion, John argues that his failure to file a timely notice of appeal was caused by his counsel's excusable neglect. I have considered the motion and all of the pleadings on file. For the reasons set forth below, John's motion is granted, and the clerk of court is directed to file John's proposed notice of appeal.

## LEGAL STANDARD

A party's motion for extension of time for filing a notice of appeal is governed by Federal Appellate Procedure Rule 4(a)(5). Rule 4(a)(5) permits a district court to extend the time within which a party must file a notice of appeal if the "party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires" and establishes either "excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A).

The Ninth Circuit's *en banc* decision in *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004) establishes that, in analyzing whether a party's neglect was excusable for purposes of Rule 4(a), the courts of the Ninth Circuit apply the excusable neglect standard set forth by the United States Supreme Court in the bankruptcy context in *Pioneer Investment Services Co. v. Brunswick Associated Ltd. Partnership*, 507 U.S. 380 (1993). *See Pincay*, 389 F.3d at 855. The *Pioneer* decision established that:

> [T]he determination [of what sorts of neglect will be considered "excusable"] is at

Page 2 - OPINION AND ORDER

> bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include... the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer*, 507 U.S. at 395. The *Pioneer* court further made clear that "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' . . . is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392 (footnotes omitted). In applying the *Pioneer* test, the Ninth Circuit – unlike "at least six" of its sister circuits, *Pincay*, 389 F.3d at 863 (Kozinski, *dissenting*) – has held that the factors set forth in *Pioneer* must be balanced against one another, that no single factor standing alone should be treated as having necessarily dispositive significance, and that there can be no rigid *per se* rule under which any specific reason for a party's neglect may be treated as necessarily inexcusable. *See id.* at 859-860.

## MATERIAL FACTS

Judgment in defendants' favor issued June 18, 2010. In connection with that final judgment, the court sent two notifications to all parties in this action via email. The first such notification, sent at 9:32 a.m. on June 18, 2010, stated in relevant part as follows:

> **OPINION & ORDER:** Defendants' Motion for Summary Judgment [31] is Granted, and all claims in this action are Dismissed with prejudice. A final judgment will be prepared.

The second such notification, sent approximately two minutes later at 9:34 a.m. on June 18, 2010, advised that the judgment referenced in the first notification had issued:

> **Judgment:** It is Ordered and Adjudged that this action is Dismissed with

prejudice. Pending motions, if any, are Denied as Moot.

John concedes that each of the court's two email notifications was sent to the correct email addresses of all four of John's "lead" attorneys of record, namely Gilion C. Dumas, Kelly W. G. Clark, Kristian S. Roggendorf, and Peter B. Janci, as well as to the correct email addresses of five paralegals and/or legal assistants employed by John's counsel, namely Russ Kleve, Jen Anderson, Tyler Vandemaker, Linda Ramsey, and an employee identified in the parties' submissions only as "Sheryl A." However, at the time the two email notifications issued, Clark was on vacation in Europe, and therefore played no role in docketing the deadline for John's notice of appeal from the judgment, and Dumas provides testimony that she failed to remark the notification that final judgment had in fact issued. The record establishes that paralegal Kleve read both notifications, but is silent as to whether Roggendorf, Janci, or any of the other paralegal and/or legal assistant recipients read or understood either of them.

Kleve testifies that he interpreted the first notification's statement that "[a] final judgment will be prepared" to mean that the court was directing defendants to prepare a bill of costs in connection with which a "money judgment" would subsequently issue. Apparently, on Kleve's interpretation, the "money judgment" on defendants' bill of costs would then serve as the court's final judgment on John's claims for purposes of determining the deadline for filing timely notice of appeal. Kleve further testifies that he did not recognize the second notification as advising that final judgment had issued.

On June 23, 2010, Kleve sent an email message to attorneys Clark, Dumas, and Roggendorf, stating as follows:

FRAP 4 says we have 30 days from the date of [*sic*] the judgment or order is

Page 4 - OPINION AND ORDER

> entered to file our appeal. Judge Papak's 6/16/10 Opinion and Order requires the Archdiocese to prepare a "final judgment," which we have not received yet.
>
> I will monitor the file for it and docket the appeal due date.

It does not appear that any of the three attorney recipients of Kleve's message noticed Kleve's clear factual and legal errors.

On June 29, 2010, defendants filed a bill of costs with the court. The first sentence of defendants' filing noted, correctly, that "[o]n June 18, 2010, the Court entered judgment for defendant. . . ." It does not appear that any of John's attorneys or their employees took note of this clear statement that final judgment had already issued, nor does it appear that any of John's attorneys or their employees considered that, under Local Rule 54-1(a), a prevailing party's bill of costs is not to be filed until *after* final judgment issues in an action. Moreover, when defendants filed their bill of costs, an email notification of the filing went out to all four of John's lead counsel of record and to all five of the paralegal and legal assistant employees of John's attorneys who are listed as recipients of the court's notifications. This email notification was clearly marked with the advice "**WARNING: CASE CLOSED on 06/17/2010.**" A similarly worded advice issued to all of the same recipients in connection with defendants' filing of the Declaration of Margaret Hoffmann in support of the bill of costs. It does not appear that any of John's attorneys or their employees took note of these indications that final judgment had been entered in this action.

On July 15, 2010, Kleve sent an email message to attorney Dumas to request that she confirm that he correctly understood the operation of Federal Appellate Procedure Rule 4(a), which governs the time within which notice of appeal from a judgment must be filed:

Page 5 - OPINION AND ORDER

> I want to make sure I am correct about docketing the appeal due date. Papak told he [*sic*] Archd[iocese] to prepare a final order. I have not seen that, but am basing the timeframe on the entry of the Money Judgment which we are not opposing.

That same day, Dumas replied as follows, sending copies of her reply (and of Kleve's original message) to attorneys Clark and Roggendorf:

> Yes, the deadline will run from the entry of the money judgment.

Thus, it appears that Dumas shared Kleve's misinterpretation of Federal Appellate Procedure Rule 4(a)(1), and shared Kleve's confusion over the fact that judgment had already been entered. It does not appear that either Clark or Roggendorf noted Kleve's or Dumas' misinterpretations.

By operation of Federal Appellate Procedure Rule 4(a)(1), John's deadline for filing notice of appeal of the judgment against him was July 19, 2010, the first business day following the date 30 days after June 18, 2010, the date final judgment issued. John did not file notice of appeal of the judgment against him by that date.

On July 21, 2010, the court granted defendants' request for award of their costs incurred in litigating this action. Kleve sent an email message to attorneys Clark, Janci, and Dumas forwarding the court's order on defendants' bill of costs and stating:

> Based on this, I am calendaring the . . . Appeal due date for **August 20, 2010** – 30 days per FRAP 4(a)(1)(A).

It does not appear that any of the three attorney recipients took note of the incongruity of calculating the date for filing notice of appeal from a judgment based on the issuance date of a record of order that makes no reference to, and does not purport to be, the judgment from which appeal was to be taken.

On Friday, August 13, 2010, Roggendorf realized that judgment had been entered June

18, 2010, and that the deadline for notice of appeal had therefore already passed. John's attorneys promptly contacted John, advised him of their error, and obtained his consent to continue representing him in this matter. John timely filed the motion for extension of time to file notice of appeal that is now before the court on Monday, August 16, 2010, 28 days after expiration of the prescribed time for filing notice of appeal.

## ANALYSIS

John's attorneys concede that their compound misconstrual of applicable rules and procedural law and carelessness in failing to take note of the issuance of final judgment in this action constituted neglect, but argue that their neglect was excusable. On that basis, John moves that this court exercise its broad discretion under Federal Appellate Procedure Rule 4(a)(5) to extend the time within which notice of appeal may be timely filed. In support of his motion, John submits a notice of appeal dated August 13, 2010, and requests that the notice be accepted for filing and be deemed timely.

As noted above, the analysis of whether neglect was excusable must take account of all relevant circumstances surrounding the omission. *See Pioneer*, 507 U.S. at 395. Of the relevant circumstances to be accounted for, it is critical to consider: (i) the danger of prejudice to the nonmoving party, (ii) the length of the delay and its potential impact on judicial proceedings, (iii) the reason for the delay, including whether it was within the reasonable control of the movant, and (iv) whether the movant acted in good faith. *See id.* Other, additional factors may also be relevant to the analysis. *See id.*

Here, John argues, and defendants do not dispute, that to permit John to file his notice of appeal at this time would not be prejudicial to defendants, that the delay is relatively short and

would not have any significant impact on subsequent appellate proceedings, and that he acted in good faith at all material times. The evidence of record supports the conclusion that John and his counsel at all times intended to file a timely notice of appeal and that the compound errors and misinterpretations that caused John's failure to file timely notice of appeal were made in good faith. I additionally agree with the parties that the danger of prejudice to defendants in the event John's motion were granted is small, and that the length of delay was relatively short and would be without significant impact on appellate proceedings.

Defendants submit that the reason for the delay was at all times within the reasonable control of John and his counsel, and that John's proffered reason is of a kind not generally considered compelling. Defendants note, correctly, that attorneys are charged with knowledge of applicable law and local rules, that John's counsel effectively invited the error that actually occurred by delegating the responsibility to interpret and apply Rule 4(a)(1) to a paralegal, and that John's attorneys had multiple opportunities to note and correct paralegal Kleve's factual and legal errors, but failed to do so. In the words of the Ninth Circuit, "a lawyer's failure to read an applicable rule is one of the least compelling excuses that can be offered," *Pincay*, 389 F.3d at 859, and here such failure is compounded by multiple additional failures of similar nature. Indeed, John effectively concedes that the errors that caused his delay were not short of egregious.

The parties' only fundamental disagreement is over how the *Pioneer* factors should be balanced against one another. Defendants invite the court to rule in the spirit of Judge Kozinski's dissent from the majority opinion in *Pincay*, which would require the courts to condition a finding of excusability on a finding that the proffered reason for a party's delay was at least

Page 8 - OPINION AND ORDER

marginally compelling. *See id.* at 861-862 (Kozinski, *dissenting*). However, as lucidly stated in Judge Berzon's concurring opinion in *Pincay*:

> *Pioneer* portends a balancing test, and does not ascribe determinative significance to *any* single factor. In other words, whether neglect is "excusable" is the conclusion one reaches after considering the pertinent factors, not an independent element with moral content. *Pioneer* thus indicates that a district court may find neglect "excusable" if it is caught quickly, hurts no one, and is a real mistake, rather than one feigned for some tactical reason -- *even if* no decent lawyer would have made that error. There is no linguistic flaw in terming such errors "excusable," meaning nothing more than "appropriate to excuse."

*Id.* at 860 (Berzon, *concurring*) (emphasis original). This case, like the case before the *Pincay* court, presents a scenario in which an egregious error was quickly caught, hurt no one, and involved no element of untoward strategic or tactical gamesmanship. In *Pincay*, the district court found neglect excusable under those circumstances, and the Ninth Circuit, after noting that it would have been "hard pressed to find any rationale requiring us to reverse" had the district court reached the opposite conclusion, *id.* at 859, held that the district court did not abuse its discretion in finding the neglect excusable, and on that basis affirmed the district court's decision, *see id.* at 860. I conclude from the foregoing that it is within my discretion either to grant or to deny John's motion.

> The *Pincay* court explained the breadth of the district court's discretion by noting that:
>
> the district court is in a better position than we are to evaluate factors such as whether the lawyer had otherwise been diligent, the propensity of the other side to capitalize on petty mistakes, the quality of representation of the lawyers . . . , and the likelihood of injustice if the appeal was not allowed.

*Id.* at 859. I note that John's counsel have shown no failure of diligence in this matter other than their failure to file timely notice of appeal, that the quality of John's representation has otherwise been good, and that, while appeal of the judgment against John may ultimately prove futile, it is

Page 9 - OPINION AND ORDER

in the interests of justice to consider the merits of John's appeal rather than to foreclose his opportunity to be heard by the court of appeals. Each of these factors mitigates at least to some extent in favor of finding John's neglect excusable. By contrast, defendants have displayed no propensity for capitalizing on petty mistakes in the course of these proceedings, and even in opposition to the motion now before the court have expressed reluctance to point an admonishing finger at John's counsel. This factor therefore mitigates at least to some extent against finding John's neglect excusable. On balance, however, I find that the secondary factors set forth by the *Pincay* court mitigate in favor of permitting John to file his notice of appeal.

Similarly, I find that on balance the *Pioneer* factors suggest that I should exercise my discretion to grant John's motion. Although John's attorneys' errors were fundamental, glaring, and repeated, the parties' evidentiary submissions establish to a rare degree of certainty the complete absence of gamesmanship or other forms of bad faith, and counsel's swift and appropriate action after detecting the errors has helped to ensure that the consequent delay in filing notice of appeal will cause defendants no prejudice and will have no material impact on appellate proceedings. I therefore find John's neglect excusable for purposes of Rule 4(a)(5).

## CONCLUSION

For the reasons set forth above, John's motion (#72) for extension of time to file notice of

///

///

///

///

///

appeal is granted. The clerk of court is directed to file John's proposed notice of appeal, submitted as an attachment to his motion, and the notice of appeal so filed is deemed timely.

Dated this 7th day of December, 2010.

*/s/ Paul Papak*
Honorable Paul Papak
United States Magistrate Judge

Page 11 - OPINION AND ORDER